**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000390
29-AUG-2025
08:01 AM
Dkt. 99 MO**

NO. CAAP-22-0000390

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

DARRIN GOMES, Plaintiff-Appellee,
v.
CLYDE GOMES, Individually, Defendant-Appellant, and
MAXIMUM LEGAL SERVICES CORPORATION as Personal Representative of
The Estate of Catherine Elizabeth Gomes and as
Successor Trustee of the GOMES TRUST, Defendant-Appellee,
and DOE DEFENDANTS 1-10, Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC181000118)

MEMORANDUM OPINION
(By: Nakasone, Chief Judge, McCullen and Guidry, JJ.)

Defendant-Appellant **Clyde** A. Gomes appeals from the
Circuit Court of the Fifth Circuit's May 23, 2022 Final Judgment
in favor of his brother, Plaintiff-Appellee **Darrin** P. Gomes, and
all underlying orders and judgments.[1] Clyde also appeals from

---

[1] The Honorable Kathleen N.A. Watanabe presided.

the July 18, 2022 order denying his Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60(b)(6) motion for relief.[2]

We affirm.

### I.    BACKGROUND

Darrin and Clyde's mother, **Catherine** E. Gomes, owned a single-family home in Waipahu (**Waipahu Property**).  In 2003, she purchased a vacant lot on Kauaʻi (**Kauaʻi Property**).  According to Darrin, Catherine promised he would receive the Kauaʻi Property after her death if he built a house on the lot.  In the thirteen months between January 2004 and February 2005, Darrin built a three-bedroom, two-and-a-half bath house on the Kauaʻi Property.

While Darrin was building the house, Catherine amended her revocable living trust (**Trust**), leaving the Kauaʻi Property to Darrin.  In a handwritten letter to her attorney, Alex **Sonson,** Catherine wrote that the "Kauai house was promised to Jennalyn's father his name is Darrin."  The amendment left the Waipahu Property to another son, **Hugh** A. Gomes.[3]

---

[2]  Clyde improperly filed an Amended Notice of Appeal adding the July 18, 2022 order denying his HRCP Rule 60(b)(6) motion.  <u>Enos v. Pac. Transfer & Warehouse, Inc.</u>, 80 Hawaiʻi 345, 355-56, 910 P.2d 116, 126-27 (1996) ("Since an amended notice of appeal relates back to the notice of appeal it purports to amend, it does not appeal an order . . . entered subsequent to the notice of appeal it purports to amend." (cleaned up)).  To promote access to justice, we construe Clyde's Amended Notice of Appeal as a notice of appeal from the July 18, 2022 order denying his HRCP Rule 60(b)(6) motion.

[3]  In addition to Darrin, Clyde, and Hugh, Catherine's other children are Clint A. Gomes and Cindy M. Kons.

2

In May 2017, after recovering from a stroke, Catherine visited Clyde on Oʻahu for two weeks; Catherine, however, did not return to Kauaʻi as planned. Two months later, Catherine amended the Trust, designating Clyde as successor trustee.

In June 2018, Catherine amended the Trust again, this time leaving all personal effects and real property to Clyde. A month later, Clyde contracted on behalf of the Trust to sell the Kauaʻi Property for $630,000.00. Darrin filed suit to prevent the sale.[4] In the suit, Catherine and Clyde were represented by Sonson.

In May 2019, Catherine was deposed. When asked if she promised Darrin the Kauaʻi house, Catherine responded "Only when I'm died [sic]". Catherine was asked again, "you promised Darrin that when you died he would get the Kauai house. Is that correct?" and Catherine answered, "Yes." Catherine later clarified, "Only if I die and I still own it, but I'm still alive and till I own it, I can do what I still want." But when asked if at the time she promised Darrin the house, she told Darrin she could change her mind and sell it, Catherine said, "No."

---

[4] Darrin's April 1, 2019 First Amended Complaint (**First Amended Complaint**) asserted: Count I (Breach of Contract or Implied Contract), Count II (Promissory Estoppel), and Count III (Unjust Enrichment/Quantum Meruit) "[a]gainst Catherine Gomes, Individually, and [as] Trustee of The Gomes Trust[.]" He asserted Count IV (Tortious Interference with Contractual Relations) against Clyde and Count V (Civil Conspiracy) against all defendants.

In February 2020, Catherine passed away, and Clyde substituted as personal representative for Catherine and her estate.

In June 2020, the parties stipulated to move the trial date from August 10, 2020, to June 14, 2021. Exhibits, proposed jury instructions, a statement of the case, a proposed verdict form, and motions in limine were due on April 15, 2021, and oppositions to these filings were due on April 26, 2021.

In February 2021, Attorney W. Anthony **Aguinaldo** substituted as Clyde's counsel, and Sonson withdrew.

On March 11, Clyde was a no-show for his scheduled deposition.

On March 27, Clyde, as successor trustee, quit claimed the Waipahu Property to himself and then to himself and his wife. Hugh, in separate proceedings, petitioned to remove Clyde as personal representative of Catherine's estate in Case No. 1CLP-20-460 (**Probate Case**) and petitioned to compel Clyde to return the Waipahu Property to the Trust in Case No. 1CTR-21-146 (**Trust Case**).[5]

---

[5] Darrin's answering brief referenced the Trust Case and Probate Case. We take judicial notice of these cases. See Hawaiʻi Rules of Evidence Rule 201; State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records. . . . This court has validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same.").

On April 15, Aguinaldo did not file any of the pretrial documents due.

On April 23, Darrin moved for partial summary judgment on Count II (Promissory Estoppel) of his April 1, 2019 First Amended Complaint (**First Amended Complaint**).[6]

On April 26, Aguinaldo did not oppose any of the pretrial filings.

On April 27, during a hearing on whether to impose sanctions for Clyde's failure to appear at the March 11 deposition, the court ordered $11,200.94 in attorneys' fees and costs as sanctions against Clyde individually.  The circuit court also recounted to Aguinaldo the April 15 and April 26 missed deadlines and attempted to convey the importance of filing motions.  The circuit court then set Clyde's deposition for May 4 and a settlement conference for May 14.

---

[6]  The four elements of a promissory estoppel claim are:

> (1)  There must be a promise;
>
> (2)  The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);
>
> (3)  The promisee does in fact rely upon the promisor's promise; and
>
> (4)  Enforcement of the promise is necessary to avoid injustice.

E.g., Gonsalves v. Nissan Motor Corp. in Hawaiʻi, 100 Hawaiʻi 149, 164-65, 58 P.3d 1196, 1211-12 (2002) (citations omitted).

Clyde and Aguinaldo appeared for Clyde's deposition, but they did not appear at the settlement conference. Aguinaldo emailed that a calendaring error caused their absence.

On May 18, according to Aguinaldo, Clyde terminated Aguinaldo as his counsel.

On May 24, opposition to Darrin's motion for partial summary judgment on Count II was due, and none was filed.

On May 31, Aguinaldo moved to withdraw as counsel.

On June 1, Aguinaldo appeared at the hearing on Darrin's motion for partial summary judgment on Count II (Promissory Estoppel). Aguinaldo informed the court he was terminated, he filed a motion to withdraw, and he did not have authority to represent or make statements on Clyde's behalf. The court noted Aguinaldo filed the motion to withdraw a mere thirteen hours earlier with the wrong case number, and the matter had not been set for a hearing. The court further noted that its staff provided Aguinaldo with specific instructions to set the matter for a hearing, and until the court acted on the motion, he would remain counsel of record. The circuit court orally granted Darrin's motion for partial summary judgment and vacated the jury trial scheduled for June 14.

On June 21, the circuit court entered its written order granting Darrin's motion for partial summary judgment on Count II. The circuit court determined there was no genuine

issue as to any material fact. The circuit court ordered "enforcement of the promise to [Darrin] by the late Catherine Gomes that [he] receive clear title to the [Kauaʻi Property] . . . at her death [because it] is necessary to avoid injustice." The circuit court awarded "the equitable remedy of specific performance" and ordered Clyde to convey title to the Kauaʻi Property to Darrin within thirty days.

On July 7, the circuit court entered an HRCP Rule 54(b) judgment in favor of Darrin on Count II (Promissory Estoppel). Clyde did not appeal from this judgment.

On July 14, Aguinaldo appeared at a hearing on whether sanctions should be imposed for failing to appear at the settlement conference. Aguinaldo informed the court that he was not participating in the hearing. The court reminded Aguinaldo that he did not file any responsive pleading and did not properly file a motion to withdraw or continue the hearing. Aguinaldo indicated to the court that he would "be filing the amended paperwork after this hearing." He did not.

On September 1, the circuit court granted in part Darrin's motions for attorneys' fees and costs related to the HRCP Rule 54(b) judgment in favor of Darrin on Count II (Promissory Estoppel) (**Count II Fees and Costs Order**). The court ordered a total of $118,622.39 in fees and costs.

Also on September 1, in the Trust Case, Darrin responded to Hugh's petition to compel Clyde to return the Waipahu Property to the Trust. In doing so, Darrin noted that Clyde had not complied with the orders in this case and that further relief may be awarded. Darrin attached (1) the May 20, 2021 order awarding $11,200.94 in attorneys' fees and costs as sanctions for Clyde missing his scheduled deposition; (2) the August 10, 2021 order awarding $6,382.14 in attorneys' fees and costs as sanctions for Clyde and Aguinaldo failing to appear at the settlement conference; and (3) the Count II Fees and Costs Order. The certificate of service shows Clyde was served through his attorney in the Trust Case, Edward S.F. **Smith.** The Judiciary Electronic Filing System shows Smith was electronically notified.

On September 21, in both the Trust Case and Probate Case, Hugh petitioned to remove Clyde as personal representative of Catherine's estate and as successor trustee of the Trust. Hugh attached the Count II Fees and Costs Order to these petitions. Smith was electronically notified in each case.

On September 28, Sonson as "Appearing Attorney for Defendant Clyde" and on behalf of himself and Aguinaldo, filed a motion to withdraw and substitute counsel. (Formatting altered.) The circuit court denied the motion for failing to comply with the rules.

On December 6, Darrin moved for "additional relief under Count II (Promissory Estoppel) and to dismiss Counts I, III, IV, and V of the First Amended Complaint . . . as moot in view of the relief granted by the Court with respect to Count II." Darrin requested (1) "damages in the total amount of $30,846.63 . . . representing the net rental income [and security deposit] paid by the tenant of the Kauai Property" to Clyde since Catherine's passing, and (2) "reasonably incurred attorneys' fees and costs in connection with the foregoing relief[.]"

In January 2022, in the Probate Case, Clyde was removed as personal representative and Maximum Legal Services Corp. (**MaxCorp**) accepted the appointment as personal representative of Catherine's estate. In the Trust Case, Clyde was ordered to return the Waipahu Property to the Trust.

On January 25, Clyde himself appeared at a hearing on Darrin's motion for additional relief regarding the rental income Clyde collected on the Kauaʻi Property during litigation. Clyde informed the circuit court that he fired Aguinaldo "in February, I think, of last year or March." He said, "I've been looking for an attorney to replace him but no one seems to be wanting to take this case," and "I guess [Aguinaldo is] not answering my calls or returning my calls." Clyde also said he tried "to contact other lawyers but because . . . this is the

9

end of the case, nobody wants to take this case so it's very hard to find a lawyer to do this[,]" and "I'm going to try to ask [Sonson] and see if I can contact him somehow[.]" The court continued the hearing noting that "the first order of business is we need to address who represents Mr. Clyde Gomes, but at this time the Court is not necessarily looking at reopening any deadlines that may have come and gone."

On February 2, Sonson filed a "Second Amended Withdrawal and Substitution,"[7] which the circuit court granted on February 14.

On March 1, Sonson filed a memorandum in opposition to Darrin's motion for additional relief regarding the rent collected, though the deadline was not reopened. The circuit court granted Darrin's motion for additional relief, ordering $30,846.63 in damages from the rent and deposit Clyde collected and $10,075.51 in related attorneys' fees and costs on April 25.

On May 23, the circuit court entered the final judgment.

On June 8, Clyde moved for relief from the final judgment pursuant to HRCP Rule 60(b)(6), asserting Aguinaldo was grossly negligent.

---

[7] We note there was no amended or first amended withdrawal and substitution.

On June 15, Clyde filed a notice of appeal from the final judgment and all underlying orders and judgments.

On July 18, the circuit court denied Clyde's HRCP Rule 60(b)(6) motion.

On August 15, Clyde appealed the order denying his HRCP Rule 60(b)(6) motion.[8]

Because Clyde did not appeal the HRCP Rule 54(b) judgments or move to stay the orders, MaxCorp paid all but the $11,200.94 sanction against Clyde individually for failing to appear at his scheduled deposition.

## II.  DISCUSSION

On appeal, Clyde raises five points of error (**POE**), challenging the denial of his HRCP Rule 60(b)(6) motion (POE 1), the granting of partial summary judgment (POE 3), and the monetary sanctions against him (POE 2, 4, and 5).  We address Clyde's third point of error first as it concerns our jurisdiction.

## A.  No Jurisdiction over the HRCP Rule 54(b) Judgments (POE 3)

In his third point of error, Clyde contends the trial court erred in granting Darrin's motion for partial summary judgment on Count II (Promissory Estoppel).

---

[8]  See supra note 2.

Parties must appeal from an HRCP Rule 54(b) judgment within thirty days after the entry of the order appealed from, and the failure to do so is an unwaivable jurisdictional defect. Budget Rent-A-Car Sys., Inc. v. Salazar, 9 Haw. App. 469, 471, 846 P.2d 901, 903 (App. 1993).

The court entered two HRCP Rule 54(b) judgments relating to its grant of partial summary judgment in favor of Darrin:  (1) the July 7, 2021 HRCP Rule 54(b) Judgment on Count II (Promissory Estoppel); and (2) the September 1, 2021 HRCP Rule 54(b) Judgment awarding Darrin attorneys' fees and costs stemming from summary judgment on Count II (Promissory Estoppel).

Clyde did not appeal either of these HRCP Rule 54(b) judgments, and we therefore lack jurisdiction to consider Clyde's third point of error.

**B.    Circuit Court Did Not Abuse Its Discretion in Denying Clyde's HRCP Rule 60(b)(6) Motion (POE 1)**

Turning to his first point of error, Clyde challenges the denial of his HRCP Rule 60(b)(6) motion, mainly arguing his attorney engaged in gross negligence by failing to consult him regarding, and failing to oppose, Darrin's motion for partial summary judgment on Count II (Promissory Estoppel).  Clyde asserts this resulted in not having "any substantive legal representation" and amounted to extraordinary circumstances.  To

12

support his challenge, Clyde relies on this court's unpublished decision in U.S. Bank National Association v. Salvacion, 125 Hawai‘i 242, 257 P.3d 1219, No. 30594, 2011 WL 1574585, at *7 (App. Apr. 26, 2011) (mem. op.).

However, Clyde's reliance on Salvacion is misplaced. In Salvacion, this court did not decide whether extraordinary circumstances warranting HRCP Rule 60(b)(6) relief existed. This court instead held that the lower court applied the wrong test and remanded to determine whether there were "'exceptional circumstances' warranting the extraordinary relief available" under HRCP Rule 60(b)(6). Salvacion, 2011 WL 1574585, at *8. Clyde does not assert that the circuit court applied a wrong test in ruling on his HRCP Rule 60(b) motion and, thus, Salvacion is inapplicable.

HRCP Rule 60(b)(6) allows the circuit court, "[o]n motion and upon such terms as are just," to relieve a party from final judgment (aside from subsections (1) through (5)) for "any other reason justifying relief from the operation of the judgment." "Equity principles guide Rule 60(b) motions." Franco v. Reinhardt, 153 Hawai‘i 406, 415, 539 P.3d 934, 943 (2023).

"A party seeking relief under HRCP Rule 60(b)(6) after the time for appeal has run must establish the existence of 'extraordinary circumstances' that prevented or rendered them

unable to prosecute an appeal." PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 331, 474 P.3d 264, 272 (2020). An attorney's gross negligence may constitute extraordinary circumstances. Hawaiʻi Hous. Auth. v. Uyehara, 77 Hawaiʻi 144, 149, 883 P.2d 65, 70 (1994) (quoting Chang v. Smith, 778 F.2d 83, 85 (1st Cir. 1985)).

HRCP Rule 60(b)(6) relief, however, "is not for the purpose of relieving [parties] from free, calculated and deliberate choices [they have] made[,]" and "[a] party remains under a duty to take legal steps to protect [its] own interests." Citicorp Mortg. Inc., v. Bartolome, 94 Hawaiʻi 422, 436, 16 P.3d 827, 841 (2000) (quoting In re Hana Ranch Co., 3 Haw. App. 141, 147, 642 P.2d 938, 942 (App. 1982) (citation omitted)), abrogated on other grounds by, Chen v. Mah, 146 Hawaiʻi 157, 457 P.3d 796 (2020); see Solaroll Shade & Shutter Corp., v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986) (noting where attorney error falls under the federal parallel 60(b)(6), those "cases specifically require gross neglect or other exceptional circumstances and indicate that the client was generally diligent despite its attorney's lapses").

We review the circuit court's decision for an abuse of discretion, and "[i]t is well settled that the trial court has a very large measure of discretion in passing upon motions under"

14

HRCP Rule 60(b).  Uyehara, 77 Hawaiʻi at 147, 883 P.2d at 68 (citations omitted).

Here, the circuit court denied Clyde's HRCP Rule 60(b)(6) motion, incorporating in its order the facts and arguments from Darrin's memorandum in opposition.[9]  Darrin's memorandum in opposition asserted that Clyde made strategic choices to substitute in Aguinaldo while pretrial deadlines were approaching and then to terminate Aguinaldo with trial a month away.  Darrin relied on Hana Ranch for the proposition that the "broad power granted by clause (6) is not for the purpose of relieving [parties] from free, calculated and deliberate choices [they have] made[,]" and "[a] party remains under a duty to take legal steps to protect [its] own interests."  3 Haw. App. at 147, 642 P.2d at 942.

As the record shows, Aguinaldo missed the April 15 and April 26, 2021 pretrial deadlines.  According to Aguinaldo, Clyde fired him a month later.  Aguinaldo's firing occurred six days before the deadline to oppose Darrin's motion for partial summary judgment on Count II (Promissory Estoppel) and less than a month before the scheduled jury trial.

_____

[9]  The circuit court did not include any findings or conclusions but incorporated the facts and arguments from Darrin's memorandum in opposition. On appeal, Clyde does not challenge the lack of separate findings and conclusions.  We note that, ordinarily, findings are not required for motions for post-judgment relief under HRCP Rule 60(b).  See Bartolome, 94 Hawaiʻi at 439-40, 16 P.3d at 844-45 (holding that under HRCP Rule 52(a), a trial court "was not required to issue findings of fact" when deciding an HRCP Rule 60(b) motion).

Following his firing, Aguinaldo filed a motion to withdraw as counsel that did not comply with the rules. Thereafter, Aguinaldo did not provide a defense and appeared at hearings only to say he was fired and could not act on Clyde's behalf. And Aguinaldo did not move to continue any deadlines or hearings.

But we cannot view Aguinaldo's actions, or lack thereof, in a vacuum. In evaluating whether HRCP Rule 60(b)(6) relief was warranted, we must also consider that Clyde remained accountable for the free, calculated and deliberate choices he made. Clyde still had a duty to take legal steps to protect his own interests. See Bartolome, 94 Hawaiʻi at 436, 16 P.3d at 841. Thus, Clyde must show he was generally diligent despite his attorney's lapses. See Solaroll, 803 F.2d at 1133.

In his declaration attached to his motion, Clyde stated, "My prior attorney, never discussed with me [Darrin's] first motion for summary judgment, never asked me to provide any information or written testimony in response to the motion, and never informed me about the potential consequences of the motion." Clyde's declaration did not assert that he was unaware of the motion for summary judgment or the hearing and did not address the fact that orders from this case were filed in the Trust and Probate Cases. Clyde's declaration also did not address Aguinaldo's other claimed failures.

16

In sum, the circuit court applied principles of law governing HRCP Rule 60(b) relief, including those from Hana Ranch, in determining that Clyde failed to show "extraordinary circumstances" required for HRCP Rule 60(b)(6) relief. On this record, we cannot conclude that the circuit court abused its discretion.

C.   **Circuit Court Did Not Err in Awarding the Additional Relief and Sanctions Requested**

In his remaining points of error, Clyde challenges the award of additional relief and sanctions.

### 1.   Additional Relief — Rental and Deposit Money and Associated Attorneys' Fees and Costs (POE 2)

Clyde contends the circuit court erred in granting Darrin's motion for additional relief in the amount of $30,846.63 for "the monthly rent paid by the tenant of the Property to Defendants, net of expenses, from March 2020 through September 2021, as well as the tenant's security deposit[,]" and $10,075.51 in attorneys' fees and costs related to recovering the monthly rent.

We construe Darrin's request for the rental and deposit money as seeking an award of compensatory damages. Appellate courts review awards "of compensatory damages for substantial evidence, and 'will not disturb an award of damages unless it is clearly unsupported by the evidence.'"  In re Exxon

<u>Valdez</u>, 270 F.3d 1215, 1247-48 (9th Cir. 2001) (citation omitted).

Clyde's contentions rely on his argument that the circuit court erred in granting Darrin's motion for summary judgment on Count II; we must disregard these contentions to the extent they rely on a judgment we have no jurisdiction to review. Darrin's motion for additional relief presented substantial evidence (e.g., the rental agreement) supporting the monthly rent and security deposit amounts. And Clyde did not provide any evidence or arguments to contradict Darrin's claims regarding Clyde's collection of monies related to the rental. Thus, we do not disturb the court's award of rental and deposit money to Darrin.

We review the award of attorneys' fees and costs in connection with the compensatory damages award for an abuse of discretion. <u>Sierra Club v. State Dep't of Transp.</u>, 120 Hawaiʻi 181, 197, 202 P.3d 1226, 1242 (2009) ("The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." (brackets omitted)).

Because the circuit court awarded Darrin compensatory damages, we cannot say it exceeded the bounds of reason or disregarded rules or principles of law in awarding attorneys' fees and costs related to obtaining the damages award.

In sum, the circuit court did not err in granting Darrin's motion for additional relief.

### 2. Sanctions for Failing to Appear at March 11, 2021 Deposition (POE 4)

Next, Clyde contends the circuit court erred by imposing sanctions for failing to attend his scheduled deposition.

The court awarded Darrin $11,200.94 in attorneys' fees and costs pursuant to HRCP Rule 37(d) for Clyde's failure to appear at his March 11, 2021 deposition.[10]

Under HRCP Rule 37(d), courts are authorized to award attorneys' fees and costs caused by the failure to appear for a properly noticed deposition:

> If a party . . . fails . . . to appear before the officer who is to take the deposition, after being served with proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

HRCP Rule 37(d) (emphasis added).

We review the court's award of attorneys' fees and costs as a discovery abuse sanction for an abuse of discretion. Aloha Unlimited, Inc. v. Coughlin, 79 Hawaiʻi 527, 532-33, 904

---

[10] We note that the $11,200.94 is the only amount outstanding as MaxCorp paid the other amounts owed from Catherine's estate.

19

P.2d 541, 546-47 (App. 1995) ("A trial court's imposition of a discovery abuse sanction is reviewable on appeal for abuse of discretion." (internal quotation marks and citation omitted)).

Clyde's original deposition date was March 24, 2020, but it was rescheduled to June 8, 2020 as the "impact of the COVID-19 pandemic became prevalent" in Hawaiʻi. Pandemic concerns persisted through June 8, 2020, and the parties again agreed to postpone Clyde's deposition. It was rescheduled to January 29, 2021, and then again to February 26, 2021, and then again to March 11, 2021. The discovery cutoff was March 15, 2021.

Darrin's counsel properly noticed the March 11, 2021 deposition upon oral examination on February 22, 2021. Although there was some back and forth regarding scheduling, the final email from Darrin's attorney stated, "Until new dates are mutually agreed upon, we intend to proceed with the noticed dates for Clyde and [Sonson's] depositions (i.e. March 11 and 12)." Aguinaldo informed Darrin's attorneys and the court that they would not attend but did not respond with new dates.

As Clyde failed to appear at the properly noticed March 11, 2021 deposition, and given these circumstances, the circuit court did not abuse its discretion by awarding attorney fees and costs under HRCP Rule 37(d).

20

### 3. Sanctions for Failing to Appear at May 14, 2021 Settlement Conference (POE 5)

Finally, Clyde contends the circuit court erred by imposing sanctions for failing to attend the settlement conference (POE 5).

Clyde's point of error relies on his June 8, 2022 HRCP Rule 60(b) motion, filed roughly ten months after the August 10, 2021 sanctions order, for the preservation of this error. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii). Both Clyde's Opening Brief and Darrin's Answering Brief agree that Darrin's motion for sanctions was unopposed by Clyde. The August 20, 2021 sanctions order notes that there was "no opposition to the Motion[.]"

Therefore, this point of error is waived. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.").

### III. CONCLUSION

Based on the foregoing, we affirm the May 23, 2022 Final Judgment to the extent we have jurisdiction and the

July 18, 2022 order denying Clyde's HRCP Rule 60(b) motion for relief.

DATED: Honolulu, Hawaiʻi, August 29, 2025.

On the briefs:

Alex M. Sonson,
for Defendant-Appellant
Clyde Gomes.

Allison Mizuo Lee,
Mauna Kea Trask,
Janine M. Yim,
(Cades Schutte),
for Plaintiff-Appellee
Darrin Gomes.

Jordon J. Kimura,
(McCorriston Miller Mukai
MacKinnon),
for Defendant-Appellee
Maximum Legal Services
Corporation, as Personal
Representative of The Estate
of Catherine Elizabeth Gomes
and as Successor Trustee of
the Gomes Trust.

/s/ Karen T. Nakasone
Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge